IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BEENA G. PATEL,

      Plaintiff,

v.                                                                                             No. CV 17-967 CG

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Beena G. Patel's *Motion to Remand to Agency with Supporting Memorandum* (the "Motion"), (Doc. 17), filed March 3, 2018; Defendant Commissioner Nancy A. Berryhill's *Response in Opposition to Remand to Agency* (the "Response"), (Doc. 19), filed May 29, 2018; and Ms. Patel's *Reply to Response to Motion to Remand* (the "Reply"), (Doc. 22), filed June 11, 2018.

Ms. Patel filed an application for disability insurance benefits on November 13, 2013 and for supplemental security income on July 8, 2015. (Administrative Record "AR" 12). In both of her applications, Ms. Patel alleged disability beginning July 26, 2009. (AR 12). Upon the advice of her attorney, Ms. Patel later amended her onset of disability date to December 15, 2014. (AR 12).

Ms. Patel claimed she was limited in her ability to work due to: post-traumatic stress disorder, panic attacks, anxiety, osteopenia, a back injury, depression, sleep apnea, lack of cartilage, and night terrors. (AR 263). Ms. Patel's applications were denied initially on May 9, 2014 and upon reconsideration on December 12, 2014. (AR 8). Ms. Patel requested a hearing before an Administrative Law Judge ("ALJ"), which

1

was held on September 27, 2016 before ALJ Raul C. Pardo. (AR 82). Ms. Patel and Karen Provine, an impartial vocational expert ("VE"), testified at the hearing and Ms. Patel was represented by attorney Michael Armstrong. (AR 82-129).

On November 28, 2016 the ALJ issued his decision, finding Ms. Patel not disabled at any time between her initial filing date, November 13, 2013, through the date of his decision. (AR 26). Ms. Patel requested review by the Appeals Council, (AR 1), which was denied, (AR 1-4), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal.

Ms. Patel, who continues to be represented by attorney Michael Armstrong, argues in her Motion that the ALJ: (1) failed to properly consider the opinions of Ms. Patel's treating physician, Jesse Barnes, M.D.; (2) "picked and chose" from the limitations provided by State Agency psychological consultants Suzanne Castro, Psy.D. and Carol Mohney, Ph.D.; and (3) erred in not applying the *Trimiar v. Sullivan* analysis under Step 5 for cases involving a borderline number of jobs. (Doc. 17 at 2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of Ms. Patel's treating physician's opinions and his consideration of the State Agency psychological consultants' opinions, the Court finds that Ms. Patel's Motion should be **GRANTED** and this case **REMANDED** for further proceedings.

**I.      Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III. Background

Ms. Patel claimed she was limited in her ability to work due to: post-traumatic stress disorder, panic attacks, anxiety, osteopenia, a back injury, depression, sleep apnea, lack of cartilage, and night terrors. (AR 263). At step one, the ALJ determined that Ms. Patel had not engaged in substantial gainful activity since December 15, 2014, the amended alleged disability onset date. (AR 14). At step two, the ALJ found that Ms. Patel has the following severe impairments: depression, post-traumatic stress disorder, anxiety, status post right hemi-colectomy with ileostomy and subsequent ileostomy takedown, fibromyalgia, and seizure disorder. (AR 14-15). At step three, the ALJ determined that none of Ms. Patel's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 15-17).

At step four, the ALJ found that Ms. Patel has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations: she can lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently; she can push and/or pull as much as she can lift and carry; she can stand and/or walk for two hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; she can occasionally climb ramps and stairs, and stoop; she can frequently reach overhead; she retains the ability to understand, remember, and carry out simple, routine tasks, and occasionally respond appropriately to the public; her time off task can be accommodated by normal breaks; she must avoid hazards such as

5

unprotected heights and moving mechanical parts; and she can never climb ladders, ropes, or scaffolds. (AR 17-18).

In formulating Ms. Patel's RFC, the ALJ stated that he considered Ms. Patel's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 96-4p. (AR 18). The ALJ also stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, 06-3p. *Id.* The ALJ found that Ms. Patel's impairments could be expected to cause her alleged symptoms. *Id.* However, the ALJ noted that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. *Id.*

Turning to the medical evidence in the record, the ALJ gave great weight to the opinions of State Agency psychological consultants Dr. Castro and Dr. Mohney. (AR 22). The ALJ explained that the State Agency psychological consultants' opinions are consistent with the medical evidence as a whole, and specifically with the findings of David LaCourt, Ph.D., a State Agency psychological consultative physician who examined Ms. Patel. *Id.* The ALJ, however, afforded lesser weight to the State Agency psychological consultants' determination that Ms. Patel had no severe medical impairments. *Id.*

The ALJ also gave great weight to the opinions of consultative examiner Gregory E. McCarthy, M.D., who opined that Ms. Patel was "capable of sitting, standing, and walking given adequate breaks in an eight-hour day, and lifting and/or carrying ten to

6

twenty pounds on an occasional basis." (AR 22). However, the ALJ concluded that Ms. Patel's physical limitations were more severe than those assessed by Dr. McCarthy. *Id.* Next, the ALJ gave great weight to the opinion of Dr. LaCourt. (AR 23). The ALJ stated that Dr. LaCourt found Ms. Patel to have mild to moderate limitations in, among other activities, carrying out instructions, concentrating, and interacting with the public. *Id.*

Finally, the ALJ gave great weight to the opinion of Dr. Barnes, Ms. Patel's treating physician, in his assessment of Ms. Patel's physical limitations. *Id.* In reaching this conclusion, the ALJ stated that Dr. Barnes' physical assessment of Ms. Patel was consistent with the other evidence in the record. *Id.* However, the ALJ gave only partial weight to Dr. Barnes' opinion regarding Ms. Patel's nonphysical limitations. *Id.* Specifically, the ALJ found that Dr. Barnes' medical opinion regarding Ms. Patel's nonphysical and mental limitations was inconsistent both internally and with the other medical evidence in the record. *Id.*

After examining Ms. Patel's relevant medical history and assessments, the ALJ found that Ms. Patel is unable to perform any of her past relevant work, and proceeded to step five of the SEP. (AR 25). At this step, the ALJ noted that Ms. Patel was 27 years old on the alleged disability onset date, and therefore classified as "a younger individual" in accordance with the Regulations. *Id.* The ALJ also determined that Ms. Patel has at least a high school education and is able to communicate in English. *Id.*

Further, the ALJ explained that if Ms. Patel had the RFC to perform the full range of sedentary work, a finding of not disabled would be directed by Medical-Vocational Rule 201.28. (AR 26). However, the ALJ stated that Ms. Patel's limitations impeded her ability to perform the full range of sedentary work. *Id.* Thus, the ALJ relied on the

testimony of the VE to determine applicable jobs that Ms. Patel could perform in the national economy. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Ms. Patel's same age, education, work experience, and RFC could perform the jobs of addresser and table worker. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the testimony of the VE and concluded that, because Ms. Patel is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). *Id.*

**IV. Analysis**

Ms. Patel presents three arguments in her Motion before the Court. First, Ms. Patel alleges that the ALJ failed to properly consider the opinions of her treating physician, Dr. Barnes. (Doc. 17 at 2). Next, Ms. Patel claims that the ALJ "picked and chose" from the limitations proffered by State Agency psychological consultants Dr. Castro and Dr. Mohney. *Id.* Finally, regarding the ALJ's Step 5 analysis, Ms. Patel alleges that the ALJ erred in not applying the *Trimiar v. Sullivan* framework for cases involving a borderline number of jobs. *Id.*

In response, the Commissioner claims that the ALJ correctly considered and weighed the medical opinions of Dr. Barnes, Dr. Castro, and Dr. Mohney in drafting Ms. Patel's RFC assessment. (Doc. 19 at 6-15). In addition, the Commissioner contends that the ALJ was not required to do a *Trimiar* analysis because the number of jobs available to Ms. Patel is sufficient when correctly analyzed on a national scale. (Doc. 19 at 15-19).

*A. The ALJ's Consideration of Treating Source Medical Opinion Evidence*

In general, the medical opinion of a treating physician is entitled to more weight than other sources, given the physician's treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Accordingly, an ALJ must follow a particular, two-step analysis when evaluating and weighing opinions from treating sources. *Watkins*, 350 F.3d at 1300-01. First, the ALJ must decide whether the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating source's opinion satisfies both criteria, it is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Next, if a treating source's opinion is not entitled to controlling weight, it is still entitled to deference. SSR 96-2P, 1996 WL 374188, at *4. In deciding how much weight to give a treating source's opinion, the ALJ must consider the following "deference" factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). While not every factor will be applicable in every case, the ALJ must explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent

9

reviewers." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Specifically, the ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1330-01); SSR 96-2p, 1996 WL 374188 at *5.

An ALJ's reasoning is not sufficiently specific if he merely states that an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were […] his reasons for rejecting that opinion are not sufficiently specific[.]") (internal quotation marks omitted); *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-93 (10th Cir. 2008) (unpublished). Indeed, the ALJ's analysis must contain specific reasons for his decision, supported by evidence in the record. SSR 96-2p, 1996 WL 374188 at *5.

In addition, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d at 1267 (citation omitted). Thus, this Court may only consider the reasoning

proffered by the ALJ himself, and not any post hoc rationale provided by the Commissioner or the claimant. *Robinson*, 366 F.3d at 1084 (citations omitted).

    *1. Nonphysical and Mental Limitations*

    Ms. Patel first contends that the ALJ failed to properly weigh the medical opinion of Dr. Barnes, her treating physician, regarding her nonphysical and mental limitations. (Doc. 17 at 14-17). In response, the Commissioner argues that the ALJ did not err in concluding that Dr. Barnes' opinions should be afforded less weight because of inconsistencies present in his findings. (Doc. 19 at 9-15).

    In November 2015, Dr. Barnes began treating Ms. Patel for: abuse/rape, post-traumatic stress disorder, polysubstance abuse, major depressive disorder, generalized anxiety disorder, panic disorder, chronic pain, fibromyalgia, headaches, chronic urinary tract infections, urethral stricture, history of renal calculi, status post motor vehicle accident, major bowel injury, status post ileostomy, obstructive sleep apnea, and anemia. (Doc. 22 at 1, n.1); (AR 704-12, 784). On September 14, 2016, he completed three medical assessments: (1) an assessment of her physical limitations; (2) an assessment of her limitations due to nonphysical impairments, such as pain or fatigue; and (3) an assessment of her mental limitations. (AR 785-88).

    In his assessment of Ms. Patel's limitations due to nonphysical impairments, Dr. Barnes assessed Ms. Patel with marked limitations in her abilities to: maintain attention and concentration; perform within a schedule; maintain physical effort; and complete a normal workday and workweek without interruptions. (AR 786). He further assessed Ms. Patel with moderate limitations in her abilities to: maintain regular attendance and be punctual, sustain an ordinary routine, work in coordination with or in proximity to others,

and make simple work-related decisions. *Id.*

In his assessment of Ms. Patel's mental limitations, Dr. Barnes found she had marked limitations in her abilities to interact appropriately with the general public and travel in unfamiliar places. (AR 787-88). He further found that Ms. Patel had moderate limitations in her abilities to: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule; sustain an ordinary work routine; work in coordination with or proximity to others; make simple work-related decisions; complete an ordinary workday and workweek without interruptions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers; maintain socially appropriate behavior; respond appropriately to changes in the work place; be aware of normal hazards and take adequate precautions; and set realistic goals or make plans independently of others. (AR 786-88).

In articulating his rationale for affording Dr. Barnes' nonphysical and mental assessments only partial weight, the ALJ provided two reasons: (1) Dr. Barnes' opinions are internally inconsistent; and (2) his opinions conflict with the other evidence in the record. (AR 23). In support of his first conclusion that Dr. Barnes' opinions are internally inconsistent, the ALJ stated that there is no explanation in the assessments as to why "both moderate and marked limitations are assessed to essentially the same limitations." (AR 23). The ALJ did not further discuss what limitations he was referring to or where such a discrepancy could be located in the record.

Armed only with this one sentence explanation, the parties have attempted to delineate for the Court what specific inconsistencies the ALJ is referencing in his opinion. Indeed, the parties seem to agree that the discrepancy in Dr. Barnes' report arises from his findings regarding Ms. Patel's limitations in maintaining attention and concentration. (Doc 17 at 15-16), (Doc. 19 at 10-11). Specifically, in Dr. Barnes' nonphysical limitations report, he noted that Ms. Patel has "marked" nonphysical limitations in "maintain[ing] attention and concentration for extended periods," and "perform[ing] activities within a schedule." (AR 786). On the following page, in the mental limitations report, Dr. Barnes opined that Ms. Patel has "moderate" mental limitations in "maintain[ing] attention and concentration for extended periods," and "perform[ing] activities within a schedule." (AR. 787). However, it remains unclear as to whether the parties' "best guess" is, in fact, what the ALJ was referring to in his one sentence analysis of Dr. Barnes' nonphysical and mental assessments.

Ultimately, whether the parties have correctly identified the ALJ's stated inconsistency is a moot point. Indeed, the Court cannot accept the parties' post hoc explanations for the ALJ's conclusions. *Carpenter*, 537 F.3d at 1267. It is not within the Court's purview to opine on what the ALJ may have been referencing in his opinion – such an exercise would usurp the essential function of the administrative process. *Id.* Rather, the proper course is to remand the case to allow the ALJ to further develop his reasoning regarding Dr. Barnes' nonphysical and mental assessments, consistent with the legal framework set forth above.

Notably, in addition to finding Dr. Barnes' report internally inconsistent, the ALJ also stated that "[t]he evidence does not support the severity of limitations assessed in

the mental health assessment[.]" (AR 23). The ALJ provides no further explanation. Claiming that a treating physician's opinion is inconsistent with the record as a whole does provide a facially valid reason for affording the physician's opinion less weight. *See Langley*, 373 F.3d at 1122-23. However, the ALJ is required to supplement this statement with specific evidence of *how* the evidence is contradictory to that provided in the record. *See id.* Consequently, merely pointing to the treating physician's assessments and opining that the medical statements set forth therein are inconsistent with the record is inadequate to overcome the deference typically afforded to treating physicians.

The Court is left to guess at how Dr. Barnes' opinion is both internally inconsistent and what specific findings differ from the record as a whole. The ALJ's analysis does not provide a "sufficiently specific" explanation for his decision to afford Dr. Barnes' opinion only partial weight. *See Langley*, 373 F.3d at 1119 (explaining that an ALJ's reasoning is not sufficiently specific if he merely states that an opinion is inconsistent without further explanation). Additionally, it is not "clear to any subsequent reviewers" what the ALJ is citing in support of his reference to alleged inconsistencies in Dr. Barnes' assessments. *See id.* Therefore, the Court finds that the ALJ failed to adequately support his conclusion that Dr. Barnes' nonphysical and mental assessments are inconsistent both internally and with the evidence in the record.

*2. Physical Limitations*

Ms. Patel also argues that the ALJ erred in not including Dr. Barnes' sit/stand limitation in his RFC assessment, despite affording Dr. Barnes' opinion regarding Ms. Patel's physical health "great[] weight." (Doc. 17 at 18). The Commissioner contends,

however, that Dr. Barnes' sit/stand limitation did not provide a specific time interval or regiment for the ALJ to incorporate it within the RFC assessment with any particularity. (Doc. 19 at 13). In addition, the Commissioner asserts that the ALJ did not ignore Dr. Barnes' medical opinion because he included it in his recitation of Dr. Barnes' conclusions. *Id.*

In his assessment of Ms. Patel, Dr. Barnes set forth the following physical limitations: she cannot maintain physical effort for long periods without a need to decrease activity or to rest because of pain and fatigue; she can occasionally lift less than ten pounds and frequently lift less than five pounds; she can stand and/or walk for less than two hours in an eight hour workday; she must periodically alternate sitting and standing to relieve pain or discomfort; she can push and/or pull without limitation; she has no difficulty in fine and gross manipulation in her fingers and hands; she can reach in all directions; and she can occasionally kneel, stoop, crouch, and crawl. (AR 785). Dr. Barnes noted that he reached these conclusions based on Ms. Patel's physical examinations and the symptoms she reported. *Id.*

In Ms. Patel's RFC assessment, the ALJ concluded that she can "sit for six hours in an eight-hour workday." (AR 17). In explaining the weight he afforded to the medical records at issue, the ALJ specifically mentioned Dr. Barnes' note that Ms. Patel requires alternating between periodic sitting and standing to relieve discomfort. (AR 23). However, the ALJ never mentioned why the RFC did not include Dr. Barnes' assigned sit/stand limitation or his reasons for discarding it, despite his assertion that he afforded Dr. Barnes' opinion great weight.

15

As set forth in more detail above, the medical opinion of a treating physician is generally entitled to more weight than other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Watkins v. Barnhart*, 350 F.3d at 1300. Here, the ALJ has not provided the Court, or the parties, with an explanation for excluding the findings of Ms. Patel's treating physician in his RFC determination. Omitting medical information and conclusions from a treating physician's report without further explanation is insufficient to create an adequate record. *Langley*, 373 F.3d at 1119. If the ALJ intends to not include Dr. Barnes' sit/stand limitation in the RFC, he must explain why and cite "good reasons" for discrediting the treating physician's limitation. *See Krauser*, 638 F.3d at 1331. Accordingly, the case should be remanded for the ALJ to provide an explanation as to why Dr. Barnes' sit/stand limitation is not included in Ms. Patel's RFC assessment.

*B. The ALJ's Consideration of the State Agency Psychologists' Opinions*

Ms. Patel next contends that the ALJ failed to include, or otherwise explain the exclusion of, the opinions of State Agency psychologists Dr. Castro and Dr. Mohney in his final RFC determination, despite affording their opinions "great[] weight." (Doc. 17 at 20-23). The Commissioner responds by arguing that the ALJ properly accounted for the limitations of the State Agency psychologists and further, the ALJ was not required to repeat the exact language employed in their opinions in his final RFC assessment. (Doc. 19 at 14-15).

Dr. Castro initially reviewed Ms. Patel's medical records on May 9, 2014. In her review, Dr. Castro reported that Ms. Patel has moderate limitations in the following areas: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday without interruptions from psychologically based

16

symptoms without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting. (AR 136-37).

On December 12, 2014, Dr. Mohney reconsidered Ms. Patel's medical records. (AR 141). Similarly to Dr. Castro, Dr. Mohney concluded that Ms. Patel maintained moderate limitations in her abilities to: complete a normal workday without interruptions; respond appropriately to changes in the work setting; and maintain attention and concentration for extended periods. (AR 152). In her review, Dr. Mohney additionally reported that Ms. Patel has moderate limitations in the following areas: the ability to interact appropriately with the general public; the ability to carry out detailed instructions; the ability to carry out very short and simple instructions; and the ability to sustain an ordinary routine without special supervision. (AR 152-53).

In his RFC assessment, the ALJ included the State Agency psychologists reported limitations regarding Ms. Patel's abilities to understand, remember, and carry out simple, routine tasks, and occasionally respond appropriately to the public. (AR 18). The ALJ further noted that the State Agency psychologists' determination that Ms. Patel "was capable of performing simple and multi-step and routine tasks in a setting without strict production quotas" was consistent with the other evidence in the record. (AR 22).

Although it is not required that ALJs discuss every piece of evidence, they are required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). This analysis will ordinarily require not only an explanation of the weight assigned to each medical opinion but also the accompanying reasons why. SSR 96-5p, 1996 WL 374183 at *5 (July 2, 1996). Of course, it is not

required that the ALJ delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to weigh medical source reports and provide "appropriate explanations" for accepting or rejecting the opinions. SSR 96-5p, 1996 WL 374183, at *5.

In this case, Ms. Patel's RFC assessment does not include the following limitations that were reported by the State Agency psychologists: the ability to sustain an ordinary routine without special supervision; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday without interruptions; and the ability to respond appropriately to changes in the work setting. Further, the ALJ does not provide any explanation as to why he did not include these findings in the RFC assessment. Most notably, the ALJ states in his opinion that he is affording the State Agency psychologists opinions "great weight," but then only includes two or three of the limitations listed in their reports.

The ALJ is required to either (1) adopt the opinions of the State Agency psychologists such that their findings are reflected in the RFC assessment, or (2) reject their opinions, or any portion of them, and explain his reasons for doing so. *See* SSR 96-5, 1996 WL 374183, at *5. The RFC assessment does not reflect all of the State Agency psychologists' assessed limitations, and the ALJ does not explain why he rejected some of them. Therefore, the Court finds that the ALJ did not apply the correct

legal standards in evaluating the opinions of Dr. Mohney and Dr. Castro, and remand is required.

V.      **Conclusion**

For the foregoing reasons, the Court finds that the ALJ failed to properly consider the opinions of Dr. Barnes, Dr. Castro, and Dr. Mohney. The Court does not address Ms. Patel's remaining claim because it may become moot upon remand.

**IT IS THEREFORE ORDERED** that Ms. Patel's *Motion to Remand to Agency with Supporting Memorandum*, (Doc. 17), is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE